H. MOLSEN & CO., INC., Appellant,

v.

Ernest B. HICKS and Norman Hicks, Appellees.

No. 6563.

Court of Civil Appeals of Texas, El Paso.

April 6, 1977.

Rehearing Denied April 27, 1977.

Grady, Johnson, Smith & Blakeley, Thomas A. Blakeley, Jr., Dallas, for appellant.

John L. Shepherd, Seminole, for appellees.

OPINION

PRESLAR, Chief Justice.

A Buyer of cotton brought this action against the Sellers to recover damages arising out of the failure of the Sellers to deliver cotton to the Buyer as promised orally, and for their failure to keep an oral promise to sign and deliver a written contract that would comply with the Statute of Frauds providing for the sale of the cotton. The trial Court granted the summary judgment of the Defendant-Sellers on the basis of Section 2.201 of the Texas Business & Commerce Code, Statute of Frauds. We affirm.

Kenneth Newcomb, as agent for Royce Cooley, who in turn was the agent of H. Molsen & Co., Inc., negotiated with two farmers, Ernest B. Hicks and Norman Hicks, for the sale of their 1973 cotton production on some 5,000 acres to Molsen. Molsen contends that a written agreement was arrived at between Newcomb and the Hicks brothers; that the Hicks brothers agreed to sign it but never did; and that in reliance on such agreement to sign the contract, Molsen hedged its purchase by selling an equivalent number of bales for delivery at harvest time and suffered monetary damages when the Hicks brothers did not sign the contract and subsequently sold their cotton to another buyer after the price of cotton had gone up.

The Appellant, Molsen, asserts that the trial Court erred in granting the summary judgment as to each of the Defendants because there is evidence to raise a fact issue as to whether such Defendant is estopped to assert the Statute of Frauds. In upholding the defense of the Statute of Frauds, the trial Court specifically states in its judgment that it is done on the basis of Section 2.201, Tex.Bus. & Comm.Code Ann. That Section provides that a contract for the sale of goods for the price of $500.00 or more is not enforceable unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought. There is no contract of writing here, but Appellant

alleges that the Appellees are precluded from asserting the Statute of Frauds by the doctrine of promissory estoppel. That doctrine, in summary, may be said to be that if a party promises to sign a writing in a situation within the Statute of Frauds, and the other party relies on the promise to his detriment, the promise may be enforced as if the writing had been signed. See *"Moore" Burger, Inc. v. Phillips Petroleum Company*, 492 S.W.2d 934 (Tex.1972); *Cooper Petroleum Company v. LaGloria Oil and Gas Company*, 436 S.W.2d 889 (Tex.1969); Comment: Wright, Promissory Estoppel Marches On—Moore-Burger, 28 Baylor L.Rev. 703 (1976).

We are of the opinion that the application of the doctrine to this case must fail for the reason that there was no complete agreement ever reached by the parties as to the terms of the written contract. The written contract is not before us, and there is some indication that it may be lost. The finality of such agreement and the terms that were agreed upon must be gleaned from the deposition of the two Appellees and the agent Newcomb, who negotiated with them. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, and every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor. *Wilcox v. St. Mary's University of San Antonio, Inc.*, 531 S.W.2d 589 (Tex.1975). Reviewing the evidence in that light, we conclude that no binding agreement was reached as to a written contract. The negotiations were carried on by Newcomb with the two Hicks brothers, and, at that time, he filled in blanks on a printed form contract. The best of the evidence is that there were farms listed, the number of bales or acres agreed upon, the price was agreed upon, and these items were inserted on the written form; and that neither he nor either of the Hicks brothers signed the writing. Mr. Newcomb testified several times that the acceptance of the contract or their signing of it was dependent on its being approved by their attorney, Mr. John Shepherd. He said at one point: "I typed up the statement and they were to take it to Mr. Shepherd for his approval and for him to look over and if it satisfied them, if it satisfied Mr. Shepherd, they would accept the contract and sign it." And at another point, the question to Mr. Newcomb was: "All right. Now, was the agreement made from—on that day?" Answer: "Well, it was my understanding that it would—if it was approved by their attorney that it would be acceptable." When asked what report he made to his principal, Mr. Cooley, he said: "That they had agreed to accept his offer and that they would sign the contract as soon as it was acceptable—as soon—if it was a satisfactory contract with their attorney." Additionally, there was testimony by Mr. Newcomb that there were certain changes to be made in the printed form of the contract, and that he never knew whether those changes were ever made or not after the contract was taken to the attorney. He gave the contract to the Appellees to take to their attorney; and in response to a question as to whether when they left his office, the Appellees still had some question about the contract, he responded: "Yes. They were going to satisfy themselves." As indicated, the writing prepared by Mr. Newcomb is not in evidence, but we are of the opinion that whatever its terms were, there was no meeting of the minds as to the final terms and no acceptance by the Appellees of the writings. The trial Court properly applied the Statute of Frauds, as there was no contract in writing. The judgment of the trial Court is affirmed.