**In re BICOASTAL CORPORATION, f/k/a The Singer Company, Debtor.**

**Bankruptcy No. 89–8191–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 5, 1990.

See also, Bkrtcy., 111 B.R. 999, 117 B.R. 700.

Harley Riedel, Tampa, Fla., Donàld Engle, St. Paul, Minn., Robert Wheeler, Chicago, Ill., for debtor.

Francis Cobb, Tampa, Fla., William Goldman, New York City, for Unsecured Creditor's Committee.

Dean Gandy, J. Christopher Luna, Dallas, Tex., for HSSM # 7.

Robert Glenn, Tampa, Fla., for debtor's Directors.

Robert Montgomery, Washington, D.C., for Taxpayers Against Fraud.

ORDER ON BICOASTAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON ITS OBJECTION TO THE CLAIM OF HSSM # 7

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing with notice to all parties in interest upon Bicoastal Corporation's (Debtor) Motion for Summary Judgment. The Motion is directed to an objection to the Claim of HSSM # 7 Limited Partnership (HSSM # 7) filed by the Debtor. The Debtor contends that, based upon the facts established by this record relevant to the objection, particularly the facts stated by HSSM # 7 itself in its Proof of Claim and its supporting Affidavits, there are no genuine issues of material facts and the Debtor is entitled to summary judgment as a matter of law sustaining its Objection and disallowing the Claim of HSSM # 7. The following facts, as established by this record, are indeed without dispute and are as follows:

HSSM # 7 is a Texas limited partnership formed in 1987. Hall Capital Corporation, a Texas Corporation, is its general partner. Craig Hall is the president of Hall Capital Corporation. In 1987 Paul Bilzerian, the principal, if not the sole shareholder of the Debtor, approached Mr. Hall regarding a possible investment by Mr. Hall in one of the entities controlled by Bilzerian. One of these entities known as Suncoast Partners Limited Partnership (Suncoast) was eventually formed in late 1987 pursuant to the partnership laws of the State of Florida, *Fla.Stat.* 620.56, et seq. Suncoast was comprised of HSSM # 7 as its sole limited partner and Bicoastal Financial, not the Debtor, the general partner of Suncoast. Bicoastal Financial's president and sole shareholder is Mr. Bilzerian. HSSM # 7 invested a total of $20,400,000.00 in Sun-

coast. In due course Suncoast became a limited partner in Bilzerian Partners Limited Partnership 1 (BPLP–1). BPLP–1 is a limited partnership whose general partners are Bicoastal Acquisition Corporation and Mr. Bilzerian. Mr. Bilzerian is also the president of Bicoastal Acquisition Corporation and he controls BPLP–1.

On November 2, 1987, an indirect subsidiary of BPLP–1 submitted a tender offer for all outstanding shares of The Singer Company (Singer) offering $50.00 per share in a proposed leveraged buyout transaction. This transaction was completed on February 3, 1988. Pursuant to the tender offer, BPLP–1 became the indirect owner, through its subsidiary, of approximately 90% of the outstanding common stock of Singer. In order to finance the purchase of Singer's stock, BPLP–1 entered into an agreement with Mesa Holding Limited Partnership (Mesa) and Shearson Lehman Brothers Holdings, Inc. (Shearson), who loaned funds to BPLP–1 in order to enable BPLP–1 to buy the controlling interest in Singer. As the result Singer became a privately held entity controlled by BPLP–1 indirectly by Mr. Bilzerian. In addition to the execution of a promissory note by Singer, Mesa and Shearson also acquired an equity position receiving preferred stock of Singer.

Soon after the consummation of the transaction, Mr. Bilzerian became Chairman of the Board and Chief Executive Officer of Singer, renamed later as Bicoastal Corporation, which is the Debtor involved in this Chapter 11 case.

It appears that in September 1988, Mr. Bilzerian informed Mr. Hall that the Bicoastal Corporation (Debtor) intended to purchase the equity interests of Mesa and Shearson in the Debtor. On September 16, 1988, Mr. Bilzerian agreed orally that the Debtor would buy HSSM # 7's interest in Suncoast for $40,000,000.00 by the first week in October 1988. This oral agreement was allegedly made by Mr. Bilzerian to Mr. Hall on behalf of the Debtor at the Debtor's headquarters in Stanford, Connecticut.

Prior to entering into this alleged oral agreement with the Debtor, Mr. Hall informed Mr. Bilzerian that HSSM # 7 wanted to get out of Suncoast and sell its limited partnership interest in Suncoast (Affidavit of Mr. Hall). Mr. Bilzerian asked him not to sell at that time because the sale might adversely affect his pending negotiations for the purchase of the equity interests of Mesa and Shearson in the Debtor. Mr. Bilzerian allegedly expressed his concern to Mr. Hall that if HSSM # 7 sold its interest in Suncoast for a high price, that might establish a high market value for the Debtor, which in turn could require payment of a much higher price for the equity interests of Mesa and Shearson in the Debtor. Mr. Bilzerian allegedly represented to Mr. Hall that the Debtor's Board of Directors had discussed the buyout of HSSM # 7's interest in Suncoast and that the entire Board was in favor of the repurchase of HSSM # 7's interest in Suncoast.

HSSM # 7 claims to have agreed that it would not seek another buyer for its interest in Suncoast for the remainder of 1988. On January 9, 1989, Mr. Bilzerian told Mr. Hall that the purchase of Mesa's and Shearson's equity interests in the Debtor had been settled at a very favorable price from the Debtor's standpoint. Mr. Bilzerian also informed Mr. Hall that the Debtor had out-negotiated Mesa and Shearson for the purchase of their equity interests by getting them to accept a price for those interests which was at the low end of the spectrum of the actual value of the Debtor.

The proposed purchase of HSSM # 7's interest in Suncoast by the Debtor never materialized. To date, HSSM # 7 has been unable to sell its interest in Suncoast to any other purchasers. In addition, HSSM # 7 alleges that Mr. Bilzerian twice orally offered $5,000,000.00 to Mr. Hall personally in order to induce Hall to agree to sell HSSM # 7's interest to the Debtor at a low price.

The claim under challenge is the proof of Claim No. 8 which was timely filed by HSSM # 7 on December 13, 1989. The claim is based on the assertion that the Debtor owes HSSM # 7 an amount not less

than $40,000,000.00 plus $2,750,000.00 in prejudgment interest as of the date of filing of the petition. The alleged liability is based upon causes of action fully described in the Fourth Amended Complaint filed April 18, 1989, entitled *HSSM # 7 Partnership v. Paul Bilzerian and The Singer Company,* now pending in the United States District Court, for the Northern District of Texas, Dallas Division, Case No. CA3–89–0965–R.

The Plaintiff's Fourth Amended Complaint consists of seven counts. The claim in Count I is based upon breach of contract by Mr. Bilzerian; the claim in Count II is based upon breach of contract by the Debtor; the claim in Count III seeks specific performance of the oral contract by Mr. Bilzerian and the Debtor. The claim in Count IV alleges fraud by Mr. Bilzerian and the Debtor and seeks compensatory and punitive damages. The claim in Count V is for attempted commercial bribery and attempted inducement of violation of fiduciary duty by Mr. Bilzerian and the Debtor and again seeks actual and punitive damages; in Count VI, HSSM requests an accounting and in Count VII, requests appointment of a receiver.

It should be noted at the outset, and there is hardly any question, that the claim under consideration is an unliquidated contingent claim and by virtue of § 502(c)(1), such claims shall be estimated for the purpose of allowance if the liquidation of the claim would unduly delay the administration of the case.

As noted earlier, the proof of claim under consideration is based on claims asserted in the Amended Complaint filed by HSSM # 7 in the United States District Court for the Northern District of Texas. Out of the seven claims set forth in the Amended Complaint, one of them relates only to Bilzerian; two of them, claims # 6 and # 7 do not really set forth any basis for an allowable claim against the Debtor.

This leaves for consideration the claim set forth in Count II based on the alleged breach of an oral contract, the claim set forth in Count III seeking specific performance of the same oral contract, and the claim set forth in Count IV alleging fraud related to the same oral contract. Considering these claims together, since they are all inter-related, this Court is satisfied that the facts which are relevant and material are indeed without dispute and the issues raised can be resolved as a matter of law without the necessity of a trial.

The Uniform Commercial Code as adopted both in the State of Florida and in Texas, includes the provision for the application of the Statute of Frauds which governs the sale of personal property, and provides that a contract for sale of personal property is unenforceable beyond $5,000.00 in the absence of a writing, regardless of the value of the property which was to be sold. *Fla.Stat.* 671.206.

A limited partnership interest is defined under both Texas and Florida law as personal property. Texas Civ.Stat.Ann. Art. 6132a, § 19 (Vernon 1976); Fla.Stat.Ann. § 620.149 (West 1989 supp.); *Pyle v. Wolf Corporation,* 354 F.Supp. 346 (D.Or.1972) (The interest of a limited partner is defined as personal property. Accordingly, it is only the Statute of Frauds of the Uniform Commercial Code [enacted in both Oregon and Colorado] which applies.) *See also Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141 (3d Cir.1972), *Horn & Hardart Co. v. Pillsbury Co.,* 703 F.Supp. 1062 (S.D.N.Y.1989), *aff'd,* 888 F.2d 8 (2d Cir.1989); *California Natural, Inc. v. Nestle Holdings, Inc.,* 631 F.Supp. 465 (D.N.J. 1986).

HSSM # 7 concedes, as it must, that it never had an agreement in writing for the purchase of its interest in Suncoast with Mr. Bilzerian, with the Debtor or with Bilzerian acting as agent on behalf of the Debtor. To overcome the obvious, it is contended by HSSM # 7 that notwithstanding this undisputed fact, it is entitled to establish by parol evidence that there was a valid enforceable contract binding on the Debtor and, due to the Debtor's breach, it is entitled to have its claim allowed after the amount of damages has been liquidated in the Texas litigation.

In support of this proposition, HSSM # 7 cites the case of *The Texas Co. v. Burkett,*

117 Tex. 16, 296 S.W. 273 (1927) in which the Supreme Court of Texas concluded that an oral contract is taken out of the operation of the Statute of Frauds when one party fully performed the contract. The Court concluded that to permit the use of the Statute as a defense in such instance would perpetrate the fraud on the other party who relied on the oral contract and acted or failed to act to his detriment on his reliance on the oral undertaking of the other party. A close analysis of *Burkett* furnishes hardly, if any, support for the proposition urged by HSSM # 7. This is so because there is nothing in this record to indicate a full performance by HSSM # 7 of this alleged oral contract, let alone any indication that in reliance of the alleged oral promise made by Bilzerian to purchase its interest in Suncoast, HSSM # 7 refused other offers to sell its interest in Suncoast.

Be that as it may, this Court is satisfied that *Burkett* no longer represents the law of Texas, and certainly not the law of the State of Florida. For instance, in a case decided by the Supreme Court of Texas in *Nagle v. Nagle*, 633 S.W.2d 796 (S.Ct.Tex. 1982), the Court held that an action for damages will not lie for the breach of a parol agreement for conveyance of realty, citing, *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150 (1945) and *Robertson v. Melton*, 131 Tex. 325, 115 S.W.2d 624 (1938). In addition, in the case of *Rockland Industries, Inc. v. Frank Kasmir Assoc.*, 470 F.Supp. 1176 (1979), the District Court for the Northern District of Texas held that even a letter written eight months after the alleged oral agreement did not constitute written confirmation of a contract and the seller was not estopped to assert the Statute of Frauds defense. The Fifth Circuit Court of Appeals construing Texas law in the case of *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763 (5th Cir.1988), held that where a plaintiff agreed to sell controlling shares of an ongoing business, it would not be estopped to urge the Statute of Frauds defense unless there is proof that it had at least expressly promised to reduce the agreement to writing which had been expressly prepared and for which the exact wording had been agreed upon.

■ In sum, neither research of counsel nor independent research found anything contrary to the cases just cited which indicates that the current state of law in Texas is what was enunciated by *Nagle, Rockland,* and *Southmark, supra* and not in *Burkett, supra.* Since there is nothing in this record to indicate that there was an express promise by Bilzerian to reduce the agreement to writing, the claim based on an alleged oral contract cannot be sustained.

Having concluded that this alleged oral contract is unenforceable as a matter of law based on the Statute of Fraud, one must consider an alternative contention of HSSM # 7 which is based on the proposition that the claim is based on alleged fraud of Bilzerian. This theory is based on the allegations that Mr. Hall was induced by fraud of Bilzerian to enter into this alleged oral contract which in turn would make the Debtor liable for fraud and entitle HSSM # 7 to assert a valid claim against the Debtor.

This fraud claim of HSSM # 7 equally fails to find support with contrary laws and cannot be sustained as a matter of law. This is.so because to permit this claim to stand would be nothing but to indirectly permit recovery through the back door of the damages which HSSM # 7 cannot recover directly on its claim of breach of an oral contract. As stated by the Eleventh Circuit in the case of *Gregg v. U.S. Industries, Inc.*, 715 F.2d 1522, 1531 (11th Cir. 1983):

> Under Florida law a fraud action may not be used to recover for breach of an unenforceable oral contract.... Nor may recovery be had for fraudulent inducement to enter an unenforceable oral contract.

*Opinion clarified* 721 F.2d 345 (1983) *cert. denied* 466 U.S. 960, 104 S.Ct. 2173, 80 L.Ed.2d 556 (1984).

■ This leaves for consideration the claim set forth in Count V of the Complaint of HSSM # 7 based on "attempted commercial bribery and attempted inducement of violation of fiduciary duty". It should be

noted that HSSM # 7 has specified no damages arising from these alleged causes of action in the Complaint. Moreover, this claim asserted against the Debtor could not be recognized unless the activities or the actionable conduct of Bilzerian would be charged to the Debtor. It needs no elaborate discussion to point out that any such conduct by a corporate officer would not be within the scope of the officer's authority, thus binding on the corporation. *See* Restatement (Second) of Agency § 235, comment c. *Cf. Lichtie v. U.S. Home Corp.,* 655 F.Supp. 1026, 1028 (D.Utah 1987) (outrageous conduct by a corporate officer will not be imputed to the corporation for purposes of the tort of interference to contractual relations). Moreover, in recognition of the futility of proving such a claim, HSSM # 7 has abandoned this claim against Mr. Bilzerian personally in the United States District Court for the Northern District of Texas.

Based on the foregoing, this Court is satisfied that there are no genuine issues of material facts and the Debtor is entitled to a judgment as a matter of law with the exception of the claim based on breach of oral contract limited to the sum of $5,000.00, provided HSSM # 7 is entitled to establish that the Debtor is liable on the oral contract.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the Debtor be, and the same is hereby, granted and the objection of the Debtor to the claim filed by HSSM # 7 be, and the same is hereby, sustained, and the claim is disallowed in toto with the exception of a claim not in excess of $5,000, provided that HSSM # 7 is able to establish and visit any liability on the Debtor based on the transaction described in this decision.

DONE AND ORDERED.